2017 ND 156

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Christian John HEDSTROM, Defendant and Appellant**

**No. 20170006**

Supreme Court of North Dakota.

Filed 6/29/2017

Christopher Nelson (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, and Mark R. Boening (appeared), Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Sarah Kyte (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, and Monty G. Mertz (appeared), Fargo, N.D., for defendant and appellant.

Tufte, Justice.

[¶ 1] Christian Hedstrom appeals a criminal judgment entered on his conditional plea of guilty to manufacturing marijuana and possession of marijuana. He was arrested after three bail bond agents entered and searched his residence, discovered large marijuana plants, and notified law enforcement. We affirm the judgment, concluding the district court did not err in denying Hedstrom's motion to suppress.

I

[¶ 2] Late at night in July 2016, three bail bond agents ("bounty hunters") arrived at Christian Hedstrom's home in search of his brother, a fugitive. They knocked on the door and announced their presence. No one responded. Inside the home, a dog was barking. The bounty hunters thought they saw movement inside. They requested assistance from the Fargo police department in searching Hedstrom's home.

[¶ 3] After law enforcement officers arrived, the bounty hunters provided them with documentation that confirmed their identity, the fugitive's identity, and Hedstrom's home as the fugitive's residence. The officers informed the bounty hunters they would not assist them in the search but would form a perimeter to ensure everyone's safety. An officer testified that an additional reason for their securing the perimeter was to capture the fugitive if he attempted to escape from a window as the bounty hunters entered the home.

[¶ 4] The bounty hunters then kicked down Hedstrom's front door and entered his home while the officers secured a perimeter outside. An officer testified that the bounty hunters searched the home for some time, conducting "a thorough search" of the home. The bounty hunters found no one inside. During their search, they found a dog and several large marijuana plants. Upon leaving the house, they showed the officers photographs they had taken inside and described the marijuana plants they had seen in the basement and the upstairs bedroom closet. This information was used by the officers to obtain a search warrant.

[¶ 5] During the bounty hunters' search, Hedstrom and his girlfriend arrived home. They informed the officers the fugitive had turned himself in, and Hedstrom demanded the officers and the bounty hunters leave his property. The officers detained Hedstrom for the next two hours as they obtained a search warrant, searched the home, and seized the marijuana plants. They arrested Hedstrom, and he was charged with manufacturing marijuana, possession of marijuana, and possession of marijuana paraphernalia.

[¶ 6] Hedstrom moved the district court to suppress evidence obtained during the search of his home. He argued the officers' acquiescence and cooperation in the bounty hunters' search transformed their search into a government-sanctioned warrantless search in violation of his constitutional rights under the Fourth and Fourteenth Amendments. He also argued the nighttime search warrant application

lacked sufficient information to establish probable cause required under N.D.R.Crim.P. 41(c)(1). The district court rejected both arguments, concluding the bounty hunters did not search Hedstrom's home at the direction of law enforcement officers and the midnight search warrant satisfied the requirements under N.D.R.Crim.P. 41(c)(1). Hedstrom appeals.

## II

[¶ 7] When reviewing a district court's decision on a motion to suppress, our precedents mandate we grant deference to the district court's factual findings. *State v. Dudley*, 2010 ND 39, ¶ 6, 779 N.W.2d 369. "We affirm a court's decision denying a motion to suppress if, after resolving conflicting evidence in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the court's findings and the decision is not contrary to the manifest weight of the evidence." *State v. Juntunen*, 2014 ND 86, ¶ 3, 845 N.W.2d 325.

[¶ 8] The first issue presented before us is whether the district court erred by concluding the officers' conduct did not transform the bounty hunters' search into a government search. The second issue is whether there was sufficient probable cause to support the nighttime search warrant. We address each issue below.

## A

[¶ 9] The first issue asks us to determine whether law enforcement violated Hedstrom's rights under the Fourth Amendment of the U.S. Constitution. The Fourth Amendment guarantees "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures." Where a person has a reasonable expectation of privacy, an officer must first obtain a judicial warrant before conducting a search unless an exception to the warrant requirement applies. *State v. Williams*, 2015 ND 103, ¶ 14, 862 N.W.2d 831.

[¶ 10] The Fourth Amendment limits "only governmental action." *State v. Nickel*, 2013 ND 155, ¶ 16, 836 N.W.2d 405. It is "wholly inapplicable" to a search conducted by a private individual, "even an unreasonable one," unless the private individual acted either "as an agent of the [g]overnment" or "with the participation or knowledge of any governmental official." *Id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Whether a private individual acted either as an agent of the government or with the participation or knowledge of any governmental official turns on whether the government official directly or indirectly supervised or encouraged the search. *United States v. Leffall*, 82 F.3d 343, 347 (10th Cir. 1996) ("A government agent must be involved either directly as a participant—not merely as a witness—or indirectly as an encourager of the private person's search before we will deem the person to be an instrument of the government."); *see also United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004) (deferring to a finding that employee of common carrier was not acting as government agent where a law enforcement officer was "not asking or ordering" the employee to open a package); *State v. Jorgensen*, 660 N.W.2d 127, 131 (Minn. 2003).

[¶ 11] The district court found that the bounty hunters were not acting as government agents and accordingly concluded that they had conducted a private search that did not run afoul of the U.S. Constitution. It reached this conclusion by finding that (1) although law enforcement officers were present and acquiesced to the search, they did not direct the bounty hunters to search Hedstrom's home; (2) the bounty

hunters acted in their own interests rather than the officers'; and (3) the officers secured a perimeter for the purpose of ensuring safety.

[¶ 12] The parties argued at length over whether the bounty hunters had a legal right to enter Hedstrom's home. Our decision does not depend on resolving that question. The officers believed the bounty hunters had legal authority to do what they did. The dispositive issue is whether any action by the officers converts the bounty hunters' private search into a warrantless government search. Because resolving the issue of the bounty hunters' authority would amount to an advisory opinion, we decline to address whether they had a legal right to enter Hedstrom's home. *Estate of Nohle*, 2017 ND 100, ¶ 17, 893 N.W.2d 755.

[¶ 13] The district court's denial of Hedstrom's motion to suppress turned on its finding that the bounty hunters were not acting in response to government agents. The district court found that although the officers acquiesced to the search, they did not direct the bounty hunters to perform the search. Although an officer testified they secured the perimeter around Hedstrom's home in hopes of catching the fugitive if he tried to escape, the officer also testified they secured the perimeter for safety purposes. The district court found the perimeter was established for safety purposes, not to assist or cooperate with the bounty hunters' search. The testimony supported the district court's findings that the officers did not ask the bounty hunters to enter the home and the bounty hunters did not act at the request of the officers. The officers arrived at the request of the bounty hunters and remained at a distance to protect against bodily injury if a confrontation developed. We are not left with a definite and firm conviction that a mistake was made in finding that the officers did not order, encourage, or otherwise participate in the bounty hunters' search. The district court's findings are supported by sufficient competent evidence in the record and are not contrary to the manifest weight of the evidence. The district court's findings support its conclusion that the bounty hunters' search was a private search, not a government search, and thus there was no Fourth Amendment violation.

## B

[¶ 14] Under N.D.R.Crim.P. 41(c)(1), the magistrate issuing a search warrant must "find a sufficient showing of probable cause to justify the authorization of a nighttime search." *State v. Fields*, 2005 ND 15, ¶ 9, 691 N.W.2d 233. The purpose of this rule "is to protect citizens from being subjected to the trauma of unwarranted nighttime searches," which "constitute greater intrusions on privacy than do daytime searches." *Id.* Probable cause for a nighttime search "exists upon a showing that the evidence sought may be quickly and easily disposed of, and we have taken judicial notice that drugs are such evidence." *Id.* at ¶ 10. An allegation that drugs are present is not by itself sufficient to authorize a nighttime warrant. *Id.*

[¶ 15] Hedstrom argues the district court erred by determining the nighttime search warrant application was supported by sufficient probable cause. Hedstrom was detained when he returned home while the officers were seeking a search warrant. He asserts the information contained in the application failed to explain how he, while detained by police, could have destroyed the marijuana in his home in the few hours before daylight. The warrant application stated that marijuana plants had been discovered in Hedstrom's home and that he was detained outside the home. The magistrate

concluded there was probable cause that Hedstrom would have attempted to destroy the marijuana plants if the officers had released him and allowed him to enter his home. More importantly, the affidavit in support of the search warrant application confirmed that no one was inside Hedstrom's home. Hedstrom was detained and the bounty hunters had just confirmed that no one was inside. Accordingly, there was no individual in the home who could have been subjected to the trauma of a nighttime search. The primary rationale for the restrictions on nighttime searches was not implicated and no purpose would have been served by waiting until 6:00 a.m. to carry out the search. The district court did not err in concluding the nighttime search warrant was supported by probable cause.

## III

[¶ 16] We affirm the criminal judgment.

[¶ 17] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.